**Felton Lynn ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–93–173 CR.**

Court of Appeals of Texas, Beaumont.

Dec. 29, 1993.

William G. Martin, Jr., Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

### OPINION

BROOKSHIRE, Justice.

This is an appeal from a felony conviction for the offense of aggravated robbery with a habitual felony offender enhancement. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon Supp. 1994). The matter was tried before a jury. The jury found the appellant guilty of the offense. The jury reached a verdict finding that the habitual felony offender enhancement counts were true and assessed punish-

ment at 99 years confinement in the Institutional Division of the Texas Department of Criminal Justice. On July 8, 1993, the court, in accordance with the jury's verdict, sentenced the appellant. The appellant now appeals. We affirm the judgment.

■ The appellant brings forth for this Court's consideration two points of error. In his first point of error he states that the evidence presented to the jury by the State was insufficient to warrant the jury's finding of guilty of the first degree felony offense of aggravated robbery as alleged in the indictment at the guilt-innocence phase of the trial.

The standard in reviewing the sufficiency of the evidence contentions is to determine whether after reviewing the evidence in the light most favorable to the prosecution's evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1989). The jury is the trier of fact and the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See* TEX.CODE CRIM.PROC.ANN. § 38.04 (Vernon 1979); *Esquivel v. State,* 506 S.W.2d 613 (Tex.Crim. App.1974). The jury may accept or reject all or any part of the testimony of any witness presented. *See Penagraph v. State,* 623 S.W.2d 341 (Tex.Crim.App.1981).

In reviewing the sufficiency of the evidence contention, this Court must review the entire case to determine whether to sustain the conviction resulting from the trial. Four witnesses were presented by the State during its case-in-chief. They were Edith Holland and Alice West, who were the eye-witnesses to the offense, and Police Officers Shawn Tolley and Robert Thompson. It should be noted that the appellant did not call any witness in defense of his case.

The first witness for the State was Ms. Edith Holland. Ms. Holland testified that on July 10, 1992, she and Alice West were working as salespersons at Alexander's Jewelry Store in Beaumont at about 3:00 p.m., when a man whom she positively identified as the appellant entered the store and asked to see some wedding rings. Ms. Holland complied with that request and pulled out the first tray of rings whereupon the man asked to see a second tray. As she was about to put the first tray up, following store policy, the man stopped her and said to leave the tray out and at that time he pulled out a gun. Then he removed all the jewelry from the two trays and put the jewelry in his pocket, telling Ms. Holland to get down on the floor. Ms. Holland testified that she was about two feet away from the robber at the time.

Ms. Holland described the weapon as being silver in color and metal-looking. She said that the weapon looked like a real gun. Ms. Holland testified that she thought the weapon was a real gun and nothing else ever crossed her mind to indicate that the weapon was not a real gun. Ms. Holland said that she feared for her life because the robber was pointing the gun at her head and she was afraid of being shot or that she could receive serious bodily injury or even death as a result from the use of this weapon by the robber. She said that the entire incident took about five minutes. All during this time Ms. Holland was pushing a security button which would notify the police of a current dangerous situation. The police arrived within six to ten minutes after the button was pushed. Ms. Holland and Ms. West described the robber as being a tall, thin black male wearing a blue or turquoise T-shirt, black pants, and a white or gray cap.

The next witness to testify was Ms. West, also a salesperson at Alexander's Jewelry Store. Her testimony was the same in every detail concerning the offense as was Ms. Holland's testimony. Ms. West's identification of the robber was equally as positive. She identified the appellant as being the robber. She testified that she saw the robber stuff the two trays of rings inside his pants. She said that when the police captured or arrested the appellant, they found the rings. She identified these rings as being the ones taken from Alexander's Jewelry Store at the time of the robbery.

The next witness to be called by the State was Officer Shawn Tolley, a patrolman with the Beaumont Police Department. Officer Tolley testified that he and his partner, Rob-

ert were on a routine patrol on July 10, 1992, and at approximately 3:00 p.m. they received a dispatch of a robbery at Alexander's Jewelry Store. Officer Tolley testified that he never talked to either one of the victims. He said that he took the information from the dispatcher and started driving around the offense area with his partner.

A few minutes later they spotted the appellant about three blocks away from the scene and attempted to talk to him. But the appellant fled to some near-by woods and escaped. The appellant was walking down the east side of Lindbergh Street when the patrolmen saw him. Officer Tolley said he observed a bulge in the front of the appellant's pants. On the next day the officer arrested the appellant when the appellant was found hiding under a bed. In a dresser drawer in the same room four gold wedding rings were found. Just prior to entering the appellant's apartment the officers also recovered a bag full of rings from the appellant's brother. He was standing in front of the apartment complex when the officers arrived. All these rings were recovered and identified by Alice West as coming from the subject jewelry store.

The fourth witness to testify for the State was Officer Thompson, the partner of Officer Tolley, who was with Officer Tolley on July 11, 1992, when they arrested the appellant. He admitted that no latent fingerprints were dusted for at the crime scene. He stated that the jewelry was recovered from the appellant's brother, Vincent Allen, whose features were similar to those of the appellant.

On cross-examination of each of these witnesses, certain facts were brought out to the jury—such as Ms. Holland being near-sighted—and the only physical description of the alleged robber given by her was that the robber was black. Also, Ms. Holland admitted she could not give approximate weight or height nor could she remember any distinct features or characteristics of the robber. On the cross-examination of witness Alice West, the defendant's attorney elicited the testimony that she could only remember the robber wearing a shirt and pants but she did not notice the color of them or give any color to the police.

It must be noted that the appellant did not call any witness to testify in his defense at the guilt-innocence phase of the trial. Appellant did not testify.

The above testimony was, we conclude, sufficient to support a finding by a rational trier of fact that every element of the offense had been proved beyond a reasonable doubt. The testimony of the two eye-witnesses supplied direct evidence of every element of the offense. We overrule point of error number one.

■ In point of error number two the appellant alleged that the trial court committed reversible error and abused its discretion in excusing juror Burdest Jenkins, finding him disabled under TEX.CODE CRIM.PROC. ANN. art. 36.29 (Vernon Supp.1994). Excusing Jenkins took place after the jury had been impaneled and given its oath and the appellant had entered a plea of not guilty. The trial court proceeded to trial with eleven jurors over the appellant's objection coupled with a motion for mistrial.

■ TEX.CODE CRIM.PROC.ANN. art. 36.-29(a) provides that when a juror dies or is disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render a verdict. The determination as to whether the juror is disabled is within the sound discretion of the trial court. Absent an abuse of that discretion, no reversible error will be found. *Bass v. State,* 622 S.W.2d 101 (Tex.Crim.App.1981) *cert. denied,* 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). However, the trial court's power to discharge the juror for a disability is limited to those instances where there exists some physical illness, mental condition, or emotional state which hinders the juror's ability to perform his duty. *Landrum v. State,* 788 S.W.2d 577 (Tex.Crim.App.1990). A juror may not be discharged because of bias or prejudice against a defendant or against the law applicable to the case. *Id.*

In the case at bar, the trial court found that juror number 13, Burdest Jenkins, was disabled due to an emotional problem. This conclusion is supported by the record. No evidence exists that Mr. Jenkins held any

bias or prejudice toward the appellant. At trial the juror was questioned by the trial court. The juror, Mr. Jenkins, explicitly and unequivocally stated that because of events that had happened in the past twenty-four hours, he could not be fair and impartial to both sides. In the case at bar Mr. Jenkins had encountered two deaths within a twenty-four hour period, the death of his aunt and the death of a brother-in-law. This information was conveyed to Mr. Jenkins the day after taking his oath and being sworn in as a juror.

Upon arriving in court the next day he informed the bailiff of his situation and asked the bailiff if he could ask the trial court to be excused from any further sitting on this jury. Mr. Jenkins said that it would be impossible for him to serve due to the fact that his aunt's funeral would be held out of town on either Friday or Saturday; and the funeral for his brother-in-law had not been set. Mr. Jenkins told the court that because of these sudden tragedies in his life he was not sure if he would be totally altogether at this time. He said that due to the distraction of these deaths that his concentration could not be 100 percent and that because of these deaths, he could not render proper service as a juror. Thus, it would be unfair to allow him to continue to sit on this jury.

We must emphasize that the trial court was able to observe Mr. Jenkins' demeanor and listen to his tone of voice. Because of these factors, inter alia, we find no abuse of discretion in the trial court's ruling. The appellant has clearly failed to show that the trial court abused its discretion in allowing Mr. Jenkins to be excused on a motion for disability. Therefore, we overrule point of error number two.

We affirm the judgment below.

AFFIRMED.