

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00468-CR

Thomas Joseph **KEATING**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 54th Judicial District Court, McLennan County, Texas
Trial Court No. 2011-1925-C2
Honorable Matt Johnson, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  May 7, 2014

AFFIRMED

A jury convicted appellant, Thomas Joseph Keating, of two counts of indecency with a child. In two issues on appeal, appellant asserts (1) the trial court erred by declaring a juror disabled and continuing the trial with eleven jurors, and (2) his trial counsel provided ineffective assistance. We affirm.

## BACKGROUND

Appellant is the step-father of K.L., the complainant in this case. K.L. testified the offenses at issue occurred at her home where she lived with appellant, her mother, and younger sisters. The

incidents that led to appellant's prosecution are alleged to have occurred in 2004, when K.L. was approximately eight-years-old. However, K.L. did not report the incidents until 2010, when she was approximately fourteen-years-old. The first offense involved appellant masturbating in K.L.'s presence. The second offense involved appellant rubbing his penis against K.L.'s vagina through their clothing.

Appellant was also investigated in 2002 and 2006 for suspected offenses relating to K.L.'s younger sisters. Although these incidents were investigated, neither resulted in prosecution due to a lack of evidence. Appellant was subsequently prosecuted for the incidents that occurred in 2004 after K.L. made an outcry to her mother. Appellant was found guilty of one count of indecency with a child and one count of indecency with a child by contact. This appeal ensued.

## DISABLED JUROR

In his first issue, appellant argues the trial court erred by declaring a juror disabled and by failing to explore less drastic alternatives before continuing the trial with eleven jurors instead of twelve.

### 1. Standard of Review

In felony cases, the Texas Constitution and the Texas Code of Criminal Procedure provide a defendant with the right to a jury of twelve. TEX. CONST. art. 5, § 13; TEX. CODE OF CRIM. PROC. ANN. art. 36.29(a) (West 2006). "[H]owever, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict . . . ." TEX. CODE CRIM. PROC. art. 36.29(a). This statute has been interpreted as mandating that the trial court proceed with the remaining eleven jurors. *Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002) ("[Article] 36.29 requires that the trial proceed with eleven jurors if one juror . . . becomes disabled from sitting.").

Disability refers not only to physical disease, "but also includes 'any condition that inhibits a juror from fully and fairly performing the functions of a juror.'" *Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (quoting *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972)). Dismissal of a juror has been upheld for physical illness, mental condition, or emotional state. *Id.* The determination of whether a juror is disabled lies within the discretion of the trial court and will not be overturned absent an abuse of that discretion. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999).

## 2. Analysis

On the third day of trial, one of the jurors, Monica Mathis, called and informed the trial court that her five-year-old daughter had been taken to the emergency room and admitted to the hospital with respiratory problems. The trial court held a hearing in chambers with appellant, his attorneys, and the State. The trial court was speaking with Ms. Mathis on the phone when the following exchange occurred:

> Court: Ms. Mathis, my court administrator received a phone call from you this morning saying that you called in and that your child was being admitted to the hospital with respiratory problems or potentially pneumonia; is that correct?
>
> Mathis: Yes, sir.
>
> Court: And . . . would you feel comfortable serving—continuing to serve on the jury while your child is in the hospital?
>
> Mathis: No.
>
> Court: And I noticed on your juror card that you're single and not married; is that correct?
>
> Mathis: Yes.
>
> Court: And so, are you a single mom supporting the child?
>
> Mathis: Yes.
>
> Court: And how old is your child?

Mathis:  She's five.

Court:  Okay.  And the doctors are admitting her into the hospital from the emergency room; is that correct?

Mathis:  Yes.

Court:  Would you be able to continue your jury service; and if so, if you were here at the courthouse would you be able to listen to the evidence, to pay attention and follow along with the evidence while your child is in the hospital?

Mathis:  No, I would not.

Court:  Would you be able to deliberate on the facts of the case or try to make a decision in the case with your child being in the hospital?

Mathis:  No.

Court:  Would your mind be elsewhere and your thoughts elsewhere because your child is in the hospital?

Mathis:  Yes.

Court:  All right, then.  Any questions from the State or from the defense?

Prosecutor:  Not from the State.

Defense counsel:  None from the defense, Your Honor.

Court:  Okay.  Then at this time, I'm going to find that Ms. Mathis is under the stress of a child being in the hospital and is for purposes of serving as a juror [] disabled because of the child being in the hospital and her inability to follow along with the evidence and to pay attention.  I will go ahead and excuse you at this time Ms. Mathis.

. . .

Defense counsel:  Your Honor, just for the record purposes, can we just have our objection to not having twelve [jurors] on the record and that we—we didn't agree to eleven [jurors], Judge.

On appeal, appellant first contends the trial court erred in declaring Ms. Mathis disabled because such a finding "requires an extraordinary or tragic circumstance."  In support of his

position, appellant cites to four cases: *Webber v. State*, *Allen v. State*, *Edwards v. State*, and *Kavali v. State*.

The *Webber* and *Allen* cases involved circumstances where a juror's family member died or was near death. *See Webber v. State*, No. 05-03-00482-CR, 2004 WL 1232922, at *1 (Tex. App.—Dallas 2004, pet. ref'd) (mem. op., not designated for publication); *Allen v. State*, 867 S.W.2d 427, 430 (Tex. App.—Beaumont 1993, no pet.). However, in each case, the decision to declare the juror disabled did not stem from the fact that the circumstances were "tragic," as argued by appellant. Rather, the trial court determined the jurors could not fully and fairly perform the functions of a juror because neither juror could give their full attention to the case or be fair and impartial. *See Webber*, 2004 WL 1232922, at *1 (declaring juror disabled due to emotional condition caused by father's health rendering juror unable to give full attention to case); *see also Allen*, 867 S.W.2d at 430 (declaring juror disabled due to two family deaths rendering juror unable to be fair and impartial).

With respect to *Edwards* and *Kavali*, the holdings of these cases are inapposite to appellant's contention. In *Edwards*, the trial court dismissed a juror because she was unable to find child care for her fourteen-year-old son. *Edwards v. State*, 981 S.W.2d 359, 366 (Tex. App.—Texarkana 1998, no pet.). The trial court dismissed the juror as disabled after finding she could not be a fair juror nor impartially deliberate upon the evidence. *Id.* The defendant complained the inability to secure child care was not a "disability" under article 36.29. *Id.* at 366–67. On appeal, the appellate court determined the trial court did not abuse its discretion in concluding the juror could not fully and fairly perform her duties. *Id*. at 367. Thus, under *Edwards*, a trial court does not abuse its discretion by finding a juror disabled when the trial court determines the juror is unable to fully and fairly perform her duties due to the inability to secure child care.

In *Kavali*, a juror's six-month-old child was sick and the juror needed to take the child to the doctor. *Kavali v. State*, No. 05-01-00835-CR, 2002 WL 31445280, at *4 (Tex. App.—Dallas 2002, pet. ref'd) (mem. op., not designated for publication). The juror had no one else to take the child to the doctor and the trial court excused the juror as disabled. *Id.* The court of appeals concluded the trial court did not abuse its discretion in declaring the juror disabled due to her "inability to find a means of taking her baby to the doctor other than by taking the baby herself." *Id.* (citing *Edwards*, 981 S.W.2d at 366). Notably, both *Edwards* and *Kavali* lack the "tragic" circumstance appellant contends is necessary to find a juror disabled under article 36.29. Consequently, we reject appellant's contention that finding a juror disabled "requires an extraordinary or tragic circumstance."

Appellant next asserts the trial court abused its discretion by failing to explore less drastic alternatives before declaring Ms. Mathis disabled and continuing the trial with eleven jurors. Appellant argues *Rojas v. State* supports this assertion. In *Rojas*, after the jury rendered its guilty verdict, but before the punishment phase of trial began, the trial court received a phone call from a juror's sister notifying it that the juror's mother was critically ill and near death. *Rojas v. State*, 986 S.W.2d 241, 248 (Tex. Crim. App. 1998). The trial court recessed the jury until the following week and the trial was able to continue with twelve jurors because the juror's mother had recovered from her illness. *Id.* The defendant complained the trial court erred by recessing and later reconvening the jury, arguing article 36.29 requires the jury be discharged if it cannot be kept together after the charge of the court is read. *Id.* The Court of Criminal Appeals concluded that due to the bifurcated nature of a jury trial, no abuse of discretion occurred because the punishment charge had not yet been read. *Id.* at 249.

We do not read *Rojas* to stand for the proposition that a trial court is *required* to explore alternatives before declaring a juror disabled. Appellant confuses the requirement to consider less

drastic alternatives before declaring a *mistrial* with the decision to declare a juror disabled. Before declaring a mistrial, a trial court must consider less drastic alternatives, such as continuing with fewer jurors. *Hill*, 90 S.W.3d at 313; *Husain v. State*, 161 S.W.3d 642, 645 (Tex. App.—San Antonio 2005, pet. ref'd). If a trial court declares a mistrial despite the availability of less drastic measures, no manifest necessity exists and a trial court abuses its discretion. *Husain*, 161 S.W.3d at 645. However, a trial court is not prevented from exploring alternatives before declaring a juror disabled, and there is no requirement that a trial court must consider less drastic alternatives before declaring a juror disabled.

Here, the record reflects the trial judge spoke to Ms. Mathis over the phone and was able to assess her demeanor. Once the trial judge confirmed Ms. Mathis's child had been admitted to the hospital, the trial judge also confirmed Ms. Mathis was a single mother and had no one else to be with the child. Additionally, Ms. Mathis stated that due to the stress of her child being in the hospital, she would not have been able to pay attention and follow the evidence. Under these circumstances, we conclude the trial court did not abuse its discretion by finding Ms. Mathis could not fully and fairly perform the duties of a juror and declaring her disabled. *See Edwards*, 981 S.W.2d at 366; *see also Owens v. State*, 202 S.W.3d 276, 277 (Tex. App.—Amarillo 2006, pet. ref'd) (concluding no abuse of discretion where juror unable to focus due to inability to secure child care).

## INEFFECTIVE ASSISTANCE

In his second issue, appellant asserts his trial counsel provided ineffective assistance by failing to call character witnesses and witnesses who investigated the prior sexual assault allegations made against him.

**1. Standard of Review**

The United States and Texas Constitutions guarantee an accused the right to the effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. To prevail on an ineffective assistance claim, a defendant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Villa v. State*, 417 S.W.3d 455, 463–64 (Tex. Crim. App. 2013). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Villa*, 417 S.W.3d at 463. Unless a defendant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The defendant bears the burden to demonstrate ineffective assistance by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

When considering an ineffective assistance claim, we look at the totality of the representation. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge in a strong presumption that counsel's actions fell within the range of reasonable professional behavior and were motivated by sound trial strategy. *Id*. To overcome this presumption, a defendant must identify the specific acts or omissions that allegedly constitute ineffective assistance and affirmatively prove that they fell below the professional norm for reasonableness. *Strickland*, 466 U.S. at 690. "The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance." *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004). Even if a defendant shows counsel's errors were unreasonable, he must further show that they actually had an adverse effect on his defense. *Strickland*, 466 U.S. at 693. Merely showing the error had some conceivable effect on the proceedings will not suffice. *Id*.

The failure to call witnesses may constitute ineffective assistance of counsel. *See Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986). However, to obtain relief on an ineffective assistance of counsel claim based on the failure to call witnesses, a defendant must demonstrate the witnesses were available to testify and their testimony would have had some benefit to his defense. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *Vasquez v. State*, 2 S.W.3d 355, 361 (Tex. App.—San Antonio 1999, pet. ref'd).

## 2. Analysis

During trial, the State called Sergeant Stuart Cooper, a police officer with one of the investigating police departments, who testified both departments investigated the sexual abuse allegations made in 2002 and 2006, and that the investigations did not result in prosecution due to a lack of evidence. He also testified that certain officers were "adamant" the complainants in the prior investigations had been coached. The State also called Officer Ann Thompson, who verified the 2006 investigation did not result in prosecution due to a lack of evidence. She also confirmed one of the investigating police departments had concluded the complainants in the prior investigations had been coached.

After the jury reached its verdict, appellant filed a Motion for New Trial alleging ineffective assistance of counsel. In his motion, appellant identified the following individuals who were involved in the prior sexual assault investigations and whose testimony, he alleged, would be exculpatory:

> Dr. Michael Smith: Dr. Smith conducted a physical examination of the complainant's sister, M.L., and found no evidence of physical trauma.

> Gail Johnson: [Child Protective Services] ("CPS") caseworker who interviewed the complainant, K.L., on March 26, 2002, when the complainant denied any sexual contact by [appellant]. Later made an unscheduled visit to [appellant's] home on April 11, and found [appellant's] interactions with the children to be appropriate. Discussed the case with her supervisor, and CPS ruled out the allegations just over two weeks after they were made.

Jaclyn Whitney: CPS caseworker responded to an identical referral made on May 9, 2002, which CPS promptly determined to be unsubstantiated and based on the same information previously relied on.

Lynne Badger: CPS caseworker responded to a similar referral on July 19, 2006. K.L. denied that [appellant] had touched her inappropriately. The case was closed because the investigator was unable to determine whether the abuse occurred.

Robert Lockhart: Riesel Police Department Officer participated in the 2006 investigation and determined that K.L.'s sister, M.L., was coached to make allegations against [appellant].

Danny Krumnow: Riesel Police Department Chief would also testify that, in his opinion, M.L. was coached.

Dr. Sami Peyton: K.L.'s therapist will testify that K.L. has made no outcry of sexual abuse against [appellant].

Christina Clements: CPS caseworker who responded to a similar referral on November 20, 2006. The case was closed administratively after the investigation disclosed that it was based on the same allegations made in July 2006.

On appeal, appellant contends trial counsel's failure to call these witnesses prevented him from inquiring into the department's basis for concluding the complainants in the prior investigations had been coached. According to appellant, without these witnesses, the jury was left to accept as true the State's assertion that these officers were incorrect or incompetent. Therefore, appellant contends the testimony of these witnesses was critical to a more comprehensive understanding of appellant's argument that the allegations were untrue.

Appellant's trial counsel responded to the ineffective assistance allegation by filing an affidavit with the trial court. In his affidavit, trial counsel stated that in preparation for trial, he reviewed reports, videotapes, photographs, and statements, and he spoke with character and other material witnesses. Trial counsel acknowledged he was aware of the above-mentioned witnesses, but chose not to call these witnesses to testify because he had already established, through the testimony of the State's witnesses, that: (1) CPS closed their prior investigations of appellant, (2) one of the investigating police departments concluded the complainants in the prior investigations

had been coached, and (3) the State previously chose not to prosecute appellant due to a lack of evidence. Trial counsel also explained it was trial strategy not to be repetitious or allow the State to rehabilitate their case through the defense's witnesses.

An appellate court cannot fairly evaluate the merits of an ineffective assistance of counsel claim on direct appeal when the record is silent as to counsel's strategy. *See Thompson*, 9 S.W.3d at 813–14. However, when, as here, appellant's counsel explained his reasoning at the new trial hearing, we may evaluate counsel's strategic and tactical considerations. *See State v. Morales*, 253 S.W.3d 686, 698 (Tex. Crim. App. 2008) (indicating reviewing court may consider whether trial counsel exercised trial strategy when trial counsel's testimony or affidavit included in record); *Gill v. State*, 111 S.W.3d 211, 215 (Tex. App.—Texarkana 2003, no pet.) (same). Based on trial counsel's affidavit, the trial court could have reasonably concluded that a sound trial strategy supported counsel's decision not to call these witnesses. Therefore, on this record, we conclude appellant has failed to affirmatively show that trial counsel's actions fell below an objective standard of reasonableness under the first prong of *Strickland*.

With respect to appellant's complaint regarding trial counsel's failure to call eleven character witnesses, appellant alleges their testimony "was relevant to [appellant's] good character for moral and safe relations with children." This statement, without more, is insufficient to establish what their testimony would have been and how such testimony would have benefited his defense. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (concluding no error denying motion for new trial where affidavit failed to state what witness testimony would have been and only stated witness "could have provided crucial exculpatory information"); *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (concluding assertion that witness *could* verify defendant did not possess merchandise at time of arrest

insufficient to show what testimony would have been). Accordingly, we conclude the trial court did not err in denying appellant's Motion for New Trial alleging ineffective assistance of counsel.

## CONCLUSION

We conclude the trial court did not err by declaring a juror disabled and continuing the trial with eleven jurors, and denying appellant's Motion for New Trial alleging ineffective assistance of counsel. Therefore, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish